UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KABITA CHOUDHURI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SPECIALIZED LOAN SERVICES LLC, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-00028-PJH<br><br>**ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>Re: Dkt. Nos. 1, 5 |

Before the court is pro se plaintiff Kabita Choudhuri's motion for a temporary restraining order and application to proceed in forma pauperis. The court finds that the matter is suitable for decision without oral argument and without further briefing. Having reviewed plaintiff's motion and her complaint, and carefully considered the arguments therein and the relevant legal authority, and good cause appearing, the court hereby DISMISSES plaintiff's complaint with leave to amend and DENIES plaintiff's motion.

## BACKGROUND

Plaintiff brings this foreclosure-related action against defendants Specialized Loan Services, LLC ("SLS") and two of its alleged agents, Britt Johnson and Barbara Johnson.

Plaintiff alleges that she signed a written mortgage contract with Wells Fargo Bank on December 22, 2005 for property located at 331 Richardson Way, Mill Valley, CA 94941 (the "property").[1] Compl. at 10; Dkt. 1-3, Choudhuri Decl. ¶ 2 (stating contract

---

[1] Plaintiff states that the property is "also known as 331-335 Richardson Way, Mill Valley, CA 94941" but it is unclear whether it comprises a single residence or multiple residences. See also Dkt. 1-1, Ex. A.

executed in 2005).  Between 2005 and the present, plaintiff's property and the 2005 mortgage contract have been the subject of several actions.  See Choudhuri v. Wells Fargo et al., 11-cv-0518 (N.D. Cal. 2011); Choudhuri v. Wells Fargo et al., 15-cv-3608 (N.D. Cal. 2015); Choudhuri v. Bell & Wells Fargo Home Mortgage, CIV083115 (Marin County Superior Court) (2008).

The present action appears to stem from events that began in early 2018. Specifically, the complaint alleges that in March 2018, First American Loan Star, the then-servicer of plaintiff's mortgage, notified plaintiff that SLS had taken over as the servicer on her mortgage.  Compl. at 12.  The complaint, however, also alleges that "In 2018, Wells Fargo Home Service was replaced by [SLS]," "without any notice to the plaintiff."  Compl. at 12.

Plaintiff alleges a number of failures on SLS's part.  First, plaintiff alleges that SLS failed to notify plaintiff that SLS had taken over for Wells Fargo Home Service.

Second, plaintiff alleges that SLS "failed to conduct due diligence prior to acquiring the servicing contract."  Compl. at 12.  According to the complaint, if SLS had conducted its due diligence, it would have discovered a January 22, 2018 stay issued by a bankruptcy court.  Compl. at 12-13.  Plaintiff has provided no information about the action in which the alleged stay was issued, and the court's own research failed to uncover any other information.  Further, though plaintiff relies on the continued effectiveness of the alleged January 22, 2018 stay, the complaint makes the incompatible allegation that the underlying action was dismissed, and that Wells Fargo received partial relief from that stay.  Compl. at 12 (alleging a motion for reconsideration of the dismissal and partial relief from stay is set for hearing on January 16, 2019).

Third, plaintiff alleges that on "December 21, 2018, plaintiff found an envelope from defendants Britt and Barbara Johnson, requesting the property be vacated by January 9, 2019" (the "December 2018 letter").  Compl. at 12.  Plaintiff takes issue with the tone of that notice, Compl. at 13, alleges that the "Johnsons are attempting to steal the property" from plaintiff, and argues that a sale could not have taken place because of

2

the January 22, 2018 stay and because plaintiff has not received a notice of default.

Lastly, plaintiff alleges that defendants failed to respond to the "qualified written request" for information that she sent in response to the December 2018 letter.

In support of her complaint, plaintiff attaches what appears to be the December 2018 letter as Exhibit A. Contrary to plaintiff's allegations, that letter—dated December 31, 2018—does not require her to vacate the premises by January 9, 2019, and appears to be sent by "Property Solutions," not SLS as plaintiff alleges. Ex. A. The letter, entitled "Notice to Occupant," informs plaintiff that the property was sold at a recently completed foreclosure sale and that Property Solutions represents the property's new owner. Ex. A. The letter informs plaintiff (and the property's current residents) that they have two non-exclusive options: "Relocation Assistance" or "Continue to Lease."

The December 2018 letter included forms allowing plaintiff to choose the "Relocation Assistance" option. Those forms, entitled "Agreement to Vacate – Relocation Program" and "Agreement to Vacate – Release," notify plaintiff that if she (and all other residents) vacates the property by January 9, 2019, and complies with certain other conditions, then the owner of the property will not pursue available legal remedies to obtain possession of the property or to recover the fair rental value for the time plaintiff continues to reside at the property. Ex. A. In addition, the letter states that if plaintiff agrees to vacate by January 9, 2019 (and complies with other conditions), the new owner, through SLS, will pay plaintiff $3,000 dollars.[2] Ex. A.

Lastly, the letter directs plaintiff to contact Britt Johnson for more information. Ex. A. The letter appears to state that Britt Johnson works for "Coldwell Banker."

Based on the above allegations and conduct, the complaint asserts three causes of action:

(1) "Common Counts" for defendants' breach of contract by failing to provide

---

[2] Plaintiff understands the letter to require her to pay the new owner $3,000. Choudhuri Decl. ¶ 5.

3

statutorily required disclosures and the "amount promised for cash-out finances" as stated in the 2005 mortgage contract. In addition, this cause of action alleges that SLS has failed to provide plaintiff with statutorily required notices and information under the Real Estate Settlement Procedures Act ("RESPA");

(2) "Breach of Contract" for SLS's failure to provide certain notices as required by the Truth In Lending Act ("TILA") and RESPA; and

(3) "Fraud" for SLS's failure to conduct due diligence and SLS's deliberate failure to withhold information from the bankruptcy court and the plaintiff about the transfer of the servicing contract. Further, plaintiff alleges the Johnson defendants should have adhered to a higher professional standard and that the notice is coercive, lacks dates of sale and the names of the alleged buyers.

**DISCUSSION**

**A.     Subject-Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and cannot hear every dispute presented by litigants. Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir.1989). Federal courts can only adjudicate cases which the Constitution or Congress authorize them to adjudicate: those cases involving diversity of citizenship (where the parties are from diverse states and the amount in controversy is at least $75,000), or a federal question, or those cases to which the United States is a party. See, e.g., Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994). Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing the contrary rests upon the party asserting jurisdiction. Id. at 377.

Every federal court is under a continuing obligation to assess its own subject-matter jurisdiction. See Fed. R. Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1093 (9th Cir. 2004).

4

Plaintiff asserts that this court has subject-matter jurisdiction because the action involves diverse parties and because it raises federal questions. See Compl. at 4-5, 8. The court disagrees. First, plaintiff has not shown that diversity jurisdiction exists because the complaint alleges that both plaintiff and the Johnsons are citizens of California. See Compl. at 1, 3; Renewed v. BAC Home Loans Servicing, LP, No. C 11-1324 PJH, 2012 WL 423741, at *2 (N.D. Cal. Feb. 8, 2012) ("jurisdiction based upon diversity . . . requires complete diversity").

Second, the court does not have federal question jurisdiction because plaintiff's action does not arise under federal law. "A case arises under' federal law within the meaning of § 1331 if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1219 (9th Cir. 2009) (quotation marks omitted). Federal law does not create plaintiff's causes of action, Compl. at 13-14 (asserting causes of actions for "Common Counts," "Breach of Contract," and "Fraud"), and plaintiff has failed to show that her relief necessarily depends on the resolution of a substantial question of federal law.

Accordingly, the court finds that it lacks subject-matter jurisdiction and DISMISSES plaintiff's complaint with leave to amend. Plaintiff's amended complaint should clearly state the basis for this court's subject-matter jurisdiction. If plaintiff believes that she has a cause of action that arises under federal law, plaintiff should assert a distinct claim that specifies the federal statute that has allegedly been violated and specifies how defendants' conduct violated a particular section or subsection of that federal statute.

Plaintiff must also differentiate between the defendants and clearly specify what each of the three defendants did in violation of a federal law. There are currently no facts pled as to the individual defendants which would give rise to liability under any of plaintiff's three causes of actions.

**B.  Motion for Temporary Restraining Order**

Because plaintiff's complaint must be dismissed for lack of subject-matter

1  jurisdiction, plaintiff's motion for a temporary restraining order must be DENIED as moot.
2  Cortes v. Sessions, No. 17-CV-1773-PJH, 2017 WL 4865563, at *4 (N.D. Cal. Oct. 27,
3  2017) ("a federal court has no power to consider claims for which it lacks subject-matter
4  jurisdiction"). In any event, even if this court had subject-matter jurisdiction, it would deny
5  plaintiff's motion for a temporary restraining order on the merits as well.

The standards for issuing a temporary restraining order (a "TRO") are "substantially identical" to those required for a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The party seeking the TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Assn's, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Nat. Resources Defense Council, 555 U.S. 7, 20 (2008)).[3] Further, " '[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.' " Koller v. Brown, 224 F. Supp. 3d 871, 879 (N.D. Cal. 2016) (quoting Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988)).

Plaintiff cannot meet that standard for two reasons. First, plaintiff cannot show an imminent or immediate threatened injury. Plaintiff motion is premised on plaintiff's belief that she is required to vacate her residence by January 9, 2019. As explained above, Exhibit A does not support that conclusion. Exhibit A gives plaintiff the <u>option</u> to <u>voluntarily</u> vacate the property by January 9, 2019. It also gives plaintiff the option to continue to lease the property from the new owner. Under either case, the December

---

[3] Alternatively, " 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

2018 letter does not indicate that plaintiff will be required to vacate by January 9, 2019. Thus, plaintiff has failed to show an imminent or immediate injury.

Second, plaintiff's motion must be denied because plaintiff has not shown she is likely to succeed on the merits of her claim. In general, plaintiff has both failed to allege how defendants conduct violated any particular statute and plaintiff has failed to include sufficient details about the complained of conduct to allow the court to determine if a statute has been violated. For example, plaintiff claims that SLS's failure to exercise sufficient due diligence resulted in SLS not knowing about the alleged January 2018 stay. But plaintiff fails to include any details about the January 2018 stay—for example, the case name and number)—and fails to state how a failure to exercise "diligence" violates any specific statute.

Similarly, plaintiff claims that the December 2018 letter violates § 807(3) of the FDCPA but fails to allege <u>how</u> it does so. That subsection prohibits "The false representation or implication that any individual is an attorney or that any communication is from an attorney." But the December 2018 letter does not purport to be from a lawyer. In addition, plaintiff fails to allege that the FDCPA applies to the December 2018 letter because plaintiff does not allege that SLS (or Property Solutions) is a "debt collector" as defined by § 803(6) of the FDCPA.[4]

Lastly, plaintiff's complaint generally alleges that SLS and its agents violated RESPA by failing to respond to plaintiff's "qualified written request." True, § 2605(e) of RESPA requires servicers to, inter alia, respond to a borrower's "qualified written requests" within five business days. But the complaint does not state a claim under that statute because plaintiff fails to allege how many days have passed since she sent the alleged letter. Further, because plaintiff has failed to include any allegations about her letter to SLS, the court cannot determine whether it was a "qualified written request" as

---

[4] The same goes for plaintiff's complaint that defendants violated § 809(b) of the FDCPA.

7

defined by § 2605(e)(1)(B).[5] Additionally, plaintiff does not assert a cause of action arising under RESPA, but simply raises a state law claim for breach of contract for the defendants' alleged failure to provide notices required by RESPA.

## C. IFP Application

A plaintiff seeking to proceed in forma pauperis "must allege poverty with some particularity, definiteness and certainty." Escobedo v. Applebees, 787 F.3d 1226, 1234 (9th Cir. 2015) (quotation marks omitted). The court finds that plaintiff's IFP application, showing plaintiff makes about $4,444.84 per month, Dkt. 4, fails to show that "plaintiff cannot pay the filing fees necessary to pursue the action." La Douer v. U.C.S.F., No. 15-cv-02214-MEJ, 2015 WL 4323665, at *2 (N.D. Cal. July 15, 2015) (citing 28 U.S.C. § 1915(a)(1)). Accordingly, the court DENIES plaintiff's application to proceed IFP. Plaintiff shall pay the entire filing fee of $400.00 no later than January 25, 2019. Failure to make that payment by that deadline, will result in dismissal of plaintiff's action.

In addition, plaintiff is responsible for service of the summons and the complaint and any amendments and attachments, as well as scheduling orders and other documents specified by the Clerk, pursuant to Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(m), plaintiff must serve defendants "within 90 days after the complaint is filed."[6]

## CONCLUSION

In accordance with the foregoing, plaintiff's complaint is DISMISSED WITH LEAVE TO AMEND. At minimum, plaintiff's amended complaint, if any, should specifically state how defendants' alleged conduct violated a particular section of a federal statute. Plaintiff may not add any additional parties without leave of court and plaintiff's amended

---

[5] The complaint also alleges a breach of contract claim but plaintiff neither attaches the alleged contract nor specifies how defendants breached that contract.

[6] The court notes that plaintiff filed a declaration stating that she called an SLS agent to inform SLS of the motion for a TRO and that plaintiff filed a "certificate of service" purporting to show that the defendants were mailed copies of plaintiff's motion. That does not satisfy plaintiff's obligation to serve the complaint on defendants, which must be done in accordance with Rule 4(e) and (g).

complaint shall be filed by January 25, 2019.

Plaintiff may wish to seek free legal advice by calling the Legal Help Center at 415-782-8982 or by signing up for an appointment at the Legal Help Center, 450 Golden Gate Avenue, 15th Floor, Room 2795, San Francisco California 94102. The litigant can speak with an attorney who will provide basic legal help, but not legal representation.

**IT IS SO ORDERED.**

Dated: January 4, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge